IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ADAMA DIOUBATE,                    :        No. 3:26cv648
            Petitioner             :
                                   :        (Judge Munley)
     v.                            :
                                   :
                                   :
CRAIG LOWE,                        :
            Respondent             :
..............................................................................................................

## MEMORANDUM

Before the court is a petition for writ of habeas corpus filed by Adama

Dioubate pursuant to 28 U.S.C. § 2241.  Petitioner challenges his present

detention at the Pike County Correctional Facility ("Pike CCF") by Immigration

and Customs Enforcement ("ICE") and the Department of Homeland Security

("DHS").  For the reasons set forth below, the petition will be granted. The

respondent will be directed to provide the petitioner with a bond hearing before

an immigration judge ("IJ") within 14 days.  If a bond hearing is not scheduled

within such time, the petitioner will be released on his own recognizance.

**Background**

Dioubate is a native and citizen of Guinea.  (Doc. 6-2, Resp. Ex. 1).  On

January 5, 2024, he entered the United States with 133 other people near

Sasabe, Arizona on the Southern Border. Id.  He was arrested by an agent of

United States Border Patrol and transported to the Tucson Soft Sided Facility for

further processing. Id.  There, he was served with a Notice to Appear and placed

in removal proceedings as being present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A)(i). Id.

From there, it appears that Dioubate was released on his own recognizance to pursue an asylum application in a non-detained setting, with regular check-ins at ICE field offices.[1] (See Doc. 8 at 2). On September 3, 2025, at one of these check-ins, Dioubate was arrested and taken into custody. He has been detained since that time and is currently being held at Pike CCF, a county prison located in Lords Valley, Pennsylvania. DHS subsequently charged the petitioner as being present in the United States without possession of required documents, 8 U.S.C. § 1182(a)(7)(A)(i)(I). (Doc. 6-3, Resp. Ex. 2, Notice to Appear at ECF p. 4).

On January 6, 2026, an IJ ordered Dioubate removed to Guinea. (Doc. 6-4, Resp. Ex 3). The IJ denied withholding of removal under the Immigration and Naturalization Act ("INA") and the Convention Against Torture. Id. Dioubate appealed the decision to the Board of Immigration Appeals ("BIA"). (Doc. 6-5, Resp. Ex. 4). That appeal remains pending.

---

[1] The petitioner is in a county jail and did not supply any exhibits with his filing. Respondent has not supplied Dioubate's A-file as ordered. This limits the court's consideration of the period between January 5, 2024 and September 3, 2025 when Dioubate was in the interior of the United States. The court has no details concerning his asylum application.

2

Dioubate argues that his prolonged detention violates the Constitution and the laws of the United States. (Doc. 1 at 7).  On behalf of the respondent, the United States Attorney's office for the Middle District of Pennsylvania asserts that 8 U.S.C. § 1225(b)(2) applies to the petitioner and that his detention does not violate the INA or the Due Process Clause of the Fifth Amendment.  Dioubate's traverse, filed by counsel, fills in the legal arguments supporting the initial pro se petition.

Specifically, the traverse argues that 8 U.S.C. § 1226(a) applies to Dioubate's detention and cites numerous district courts previously deciding the issue.  Additionally, the traverse addresses Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026).  In Buenrostro-Mendez, the Fifth Circuit agreed with respondent's reading of Section 1225.  Since that time, the Eighth Circuit has also interpreted Section 1225(b)(2)(A) in the respondent's favor.  Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026).  Below, the court revisits the analysis and application of Section 1225(b)(2) and Section 1226(a).  The court also addresses the due process concerns inherent in the petitioner's continued detention without a bond hearing.

**Jurisdiction**

Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution

or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Dioubate filed the instant petition while detained at Pike CCF. The petitioner asserts that his continued detention violates his right to due process. He also asserts that the wrong provision of the INA is being used to justify his detention. Thus, the court has habeas jurisdiction over the petition. Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004).

## Analysis

### 1. Whether Section 1225(b)(2) or Section 1226(a) Applies to Dioubate

The response and traverse engage in an extended discussion about whether 8 U.S.C. § 1225(b)(2) or § 1226(a) applies to the petitioner, an individual that was apprehended at the border and released into the interior of the United States while the removal process proceeded. The distinction is consequential.

Under Section 1226(a), a noncitizen in removal proceedings *may* be detained pending a decision on removal. 8 U.S.C. § 1226(a). However, pending a removal decision, the noncitizen also may be released on bond or conditional parole following an individualized hearing before an immigration judge. 8 U.S.C. § 1226(a)(1)–(2); 8 C.F.R. §§ 236.1(d), 1236.1(d).

By contrast, under Section 1225(b)(2), a noncitizen classified as an "applicant for admission" *shall* be detained for removal proceedings. 8 U.S.C. § 1225(b)(2)(A). Pending a removal decision, the noncitizen is eligible only for

4

discretionary parole at the unreviewable discretion of DHS. See Jennings v. Rodriguez, 583 U.S. 281, 297 (2018) ("And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

Specifically, Section 1225(b)(2)(A) provides: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained[.]"  The statute refers to the term "*admission*," which has a particular meaning.  The statute also refers to the terms "*applicant for admission*" and "*alien seeking admission*" — previously addressed at length in Buenrostro-Mendez and Avila and in hundreds of district court decisions in the past year.

*"Admission"* — The term "admission" is defined in the INA as follows: "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101 (a)(13)(A).

*"Applicant for Admission"* — The term "applicant for admission" is defined in Section 1225 itself.  That is, "[a]n alien present in the United States who has not been admitted (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in

5

international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1).

*"Alien Seeking Admission"* — Unlike "applicant for admission," the phrase "alien seeking admission" is not defined in Section 1225. There are two different views regarding construction of the statute and its implications. Under the interpretation advanced by the respondent, every "applicant for admission" is an "alien seeking admission" because the terms mean the same thing. (Doc. 6 at 18). This is how Section 1225(b)(2)(A) must be interpreted according to the Fifth and Eighth Circuits. See Buenrostro-Mendez, 166 F.4th at 502–08; Avila, 170 F.4th at 1133–38. This manner of construction authorizes indefinite confinement of individuals like the petitioner.

In contrast, but in conjunction with considering a preliminary injunction, the Seventh Circuit has determined that such a position renders the phrase "seeking admission" superfluous and triggers a presumption that this statutory interpretation is incorrect. Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1061 (7th Cir. 2025). Similarly, the consensus view in this district court is that the phrase "alien seeking admission" itself does independent work and requires "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry[,]" Quispe v. Rose, No. 3:25-CV-2276, --- F. Supp. 3d ----, 2025 WL 3537279, at *5 (M.D. Pa. Dec. 10, 2025)

6

(Mehalchick, J.) (citations omitted), and does not apply to "noncitizens like [p]etitioner who have resided in the United States for years[,]" Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865 at *5 (December 8, 2025) (Mariani, J.) (citations omitted); see also Nossov v. Hoover, No. 1:25-2562, 2026 WL 711691, at *3 (M.D. Pa. Mar. 13, 2026) (Mannion, J.); Diaz Aparicio v. Lowe, No. 3:25-CV-02413, 2026 WL 526702, at *8 (M.D. Pa. Feb. 25, 2026) (Saporito, J.); Romero v. Lowe, No. 4:26-CV-00009, 2026 WL 296215, at *5 (M.D. Pa. Feb. 4, 2026) (Brann, C.J.); Hernandez v. Kunes, No. 1:25-CV-01847, 2026 WL 411726, at *5 (M.D. Pa. Feb. 13, 2026) (Wilson, J.); Chaudhari v. Rose, No. 3:26-CV-242, 2026 WL 540378, at *6 (M.D. Pa. Feb. 26, 2026) (Neary, J.).

As these district court cases have recognized, to adopt the government's position would, *inter alia*, negate the plain meaning of the text, ignore context and history, violate the rule against surplusage, and render the mandatory detention of certain "criminal aliens" under Section 1226(c) as arising from a recently-expanded, but ultimately redundant, statutory provision. See Patel, 2025 WL 3516865 at *5 (citing Centeno Ibarra v. Warden of the Fed. Det. Ctr. Philadelphia, No. CV 25-6312, 2025 WL 3294726, at *6 (E.D. Pa. Nov. 25, 2025) (Rufe, J.), app. dismissed, No. 26-1148 (3d Cir. April 14, 2026)). The dissenting judges on the Fifth and Eighth Circuit panels similarly address the myriad issues with respect to the respondent's position. Buenrostro-Mendez, 166 F.4th at 509–

21 (Douglas, J., dissenting); Avila, 170 F.4th at 1138–41 (Erickson, J, dissenting).

The consensus district court opinion and the Buenrostro-Mendez and Avila dissents remain persuasive regarding the interpretation of Section 1225(b)(2)(A) and Section 1226(a).  In Dioubate's case, he was released on his own recognizance at the border into the interior to pursue his asylum claim.  He lived in the interior for approximately 18 months before being taken into custody for removal proceedings.  Until his removal order becomes final, 8 U.S.C. § 1226(a) applies to Dioubate's detention.  Section 1225(b)(2)(A) does not apply.  Under Section 1226(a), the petitioner may receive a bond hearing, and one will be ordered in this case.[2]

---

[2] The traverse argues against a bond hearing, alleging that an IJ will ratify Dioubate's detention and deny bond.  The traverse also argues that the government will not comply with any of the court's orders.  These arguments are unavailing.  To the extent that there is a concern about bond hearing procedures, the next section of the analysis should alleviate any of the petitioner's concerns. Otherwise, the court remains available to consider any future challenges to that process. See Shonhai v. Lowe, No. CV 3:24-229, 2026 WL 538865, at *10 (M.D. Pa. Feb. 26, 2026), app. filed, No. 26-1566 (3d Cir. March 17, 2026) (citing Quinteros v. Warden Pike Cnty. Corr. Facility, 784 F. App'x 75, 78 (2019); Ghanem v. Warden Essex Cnty. Corr. Facility, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) (nonprecedential)) (holding that, despite 8 U.S.C. § 1226(e), the court retained jurisdiction to consider a motion to enforce a writ of habeas corpus where there is a due process challenge to the conduct of a bond hearing before an immigration judge),

## 2. Whether Dioubate's Due Process Rights Are Being Violated

Even if it is later determined that 8 U.S.C. § 1225(b)(2)(A) applies to Dioubate, in light of the analyses in Buenrostro-Mendez and Avila, then his prolonged detention violates his constitutional rights.

It is undisputed in this case that the petitioner entered the United States illegally and was apprehended at or near the United States-Mexico border. People who enter this country without legal authorization are not stripped immediately of all their rights because of this single illegal act. See Lozano v. City of Hazleton, 496 F. Supp. 2d 477, 498 (M.D. Pa. 2007), aff'd in part, vacated in part, 620 F.3d 170 (3d Cir. 2010), cert. granted, judgment vacated sub nom. City of Hazleton, Pa. v. Lozano, 563 U.S. 1030 (2011), and aff'd in part, rev'd in part, 724 F.3d 297 (3d Cir. 2013).  That is, the Due Process Clause applies to everyone, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

To reiterate, "[n]o person," including Dioubate, "shall…be deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (citation omitted); see also Zadvydas v. Davis, 533 U.S. 678, 721 (2001) (Kennedy, J., dissenting) ("both

9

removable and inadmissible aliens are entitled to be free from detention that is arbitrary or capricious.").

If 8 U.S.C. § 1225(b)(2)(A) applies to Dioubate now, it also applied to him on the Sasabe, Arizona side of the Southern Border and in the Tucson Soft Sided Facility. In January 2024, in Tucson, the Department of Homeland Security released Dioubate and scheduled check-ins while the removal process played out. Section 1225(b)(2)(A) was understood to apply to the petitioner in a certain manner on that day. In September 2025, 18 months later, the government detained Dioubate in the interior and told him that he would be detained until he was removed from the country. Section 1225(b)(2)(A) was understood to mean something different by the government on that second day. Absent any evidence that Dioubate was a danger to the community or a flight risk, and no such evidence being provided in response to the petition, the government's conduct demonstrates arbitrariness.

Additionally, the concept of procedural due process is flexible and calls for such protections as the particular situation demands. Jennings, 583 U.S. at 314 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). For example, Section 1226(c) is a similar mandatory detention statute, applicable to a class of aliens convicted of certain crimes. See Demore v. Kim, 538 U.S. 510, 518 (2003). Section 1226(c) does not limit the length of the detention it authorizes, Jennings,

583 U.S. at 303, but "a petitioner may still bring an as-applied constitutional challenge alleging that his continued detention has become unconstitutional under the Due Process Clause of the Fifth Amendment." Ibrahim v. Superintendent of Miami Corr. Facility, No. 1:25-CV-00727, 2026 WL 116489, at *4 (M.D. Pa. Jan. 15, 2026) (Wilson, J) (citing German Santos v. Warden Pike Cty. Corr. Facility, 965 F.3d 203, 208–09 (3d Cir. 2020); see also Zadvydas, 533 U.S. at 690 ("statute[s] permitting indefinite detention of an alien would raise a serious constitutional problem").

In such as-applied challenges, "when detention becomes unreasonable, the Due Process Clause demands a hearing." German Santos, 965 F.3d at 210 (quoting Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011), abrogated in part on other grounds by Jennings, 583 U.S. at 304–05.[3] This is "a 'highly fact-specific' inquiry." Id. (quoting Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 474 (3d Cir. 2015), abrogated in part on other grounds by Jennings, 583 U.S. at 304–05).[4] In this circuit, there is a non-exhaustive list of four factors to consider in assessing whether an alien's detention has grown

---

[3] Jennings did not call into question the holding in Diop that detention under Section 1226 may violate due process if unreasonably long. Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 278 (3d Cir. 2018).

[4] Jennings did not abrogate the holdings in Diop and Chavez-Alvarez that Section 1226(c) is unconstitutional "when applied to detain an alien an unreasonably long [time] without a bond hearing." German Santos, 965 F.3d at 210.

unreasonable: 1) duration of detention; 2) whether the detention is likely to continue; 3) the reasons for the delay; and 4) whether the conditions of confinement are meaningfully different from criminal confinement. Id. at 211 (citations omitted).

District court decisions support the application of the German Santos factors to prolonged Section 1225(b) detention. A.L. v. Oddo, 761 F. Supp. 3d 822, 826 (W.D. Pa. 2025); F.M.S. v. Lowe, et al., No. 1:25-CV-02061, 2026 WL 1113769, at *5 (M.D. Pa. Apr. 24, 2026) (Kane, J.) (citing Mashchenko v. Rokosky, No. CV 25-12387 (RK), 2026 WL 185204, at *3 (D.N.J. Jan. 25, 2026)); Corcuera v. Lowe, No. 3:26-CV-00084, 2026 WL 383465, at *3 (M.D. Pa. Feb. 11, 2026) (Mehalchick, J.); see also Pierre v. Doll, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018) (determining that noncitizens detained pre-removal pursuant to Section 1225(b) have a due process right to an individualized bond consideration once the duration of their detention has become unreasonable); Destine v. Doll, No. 3:17-CV-1340, 2018 WL 3584695, at *4 (M.D. Pa. July 26, 2018) (same) (collecting cases); Fils-Aime v. FCI Berlin, Warden, 808 F. Supp. 3d 218, 225 (D.N.H. 2025) (applying German Santos factors to Section 1225(b) detention outside the appellate jurisdiction of the Third Circuit).  Persuaded by these cases, the court will use the German Santos framework to evaluate Dioubate's as-

12

applied constitutional challenge to detention without a bond hearing in the event that 8 U.S.C. § 1225(b)(2)(A) applies to his detention.

***Duration of Detention*** – Duration of detention is the most important factor. German Santos, 965 F.3d at 211.  Under the case law, "[t]here is no presumption of reasonableness or unreasonableness of any duration." German Santos, 965 F.3d at 211 (citing Chavez-Alvarez, 783 F.3d at 474 n.7; Diop, 656 F.3d at 234). The longer noncitizens are detained under Section 1226(c) without bond hearings, however, "the more likely their detention abridges the liberty secured by the Due Process Clause." Michelin v. Warden Moshannon Valley Corr. Ctr., 169 F.4th 418, 433 (3d Cir. 2026) (citing German Santos, 965 F.3d at 209–10; Demore, 538 U.S. at 532).

As it stands, Dioubate has been detained since September 3, 2025, a period approaching eight months.  That is less than the periods typically found unreasonable in this district for Section 1226(c) detainees. Yirenkyi v. Hoover, No. 3:25CV2414, 2026 WL 268230, at *4, and Appx. (M.D. Pa. Feb. 2, 2026) (collecting cases).  Nonetheless, in Michelin, the Third Circuit reiterated clearly: detention becomes more and more suspect after five months for Section 1226(c) detainees. Id. (citing German Santos, 965 F.3d at 211–12); see also Diop, 656 F.3d at 234 (discussing Demore, 538 U.S. at 530).

13

Dioubate is not a Section 1226(c) detainee. This is an important difference to consider. Specifically, the entire German Santos framework was built on a presumption that short-term deprivations of liberty are constitutional to prevent a criminal alien's flight or danger to the community, but that such detention eventually reaches a temporal tipping point. 965 F.3d at 209 (discussing Chavez-Alvarez, 783 F.3d at 474–75, 478). At that tipping point, due process requires the government to justify continued detention at a bond hearing. Id. Here, respondent takes the position that Dioubate is merely an "applicant for admission" subject to detention under Section 1225(b)(2)(A), not a criminal alien subject to detention under Section 1226(c). If Section 1225(b)(2)(A) indeed applies to Dioubate's detention, then that temporal tipping point must arrive much sooner. There is a difference between an "applicant for admission" under Section 1225(b)(2)(A) and a person who has been convicted of certain crimes under Section 1226(c). At eight months, Dioubate's detention without a bond hearing under Section 1225(b)(2)(A) would be unreasonable. This factor weighs in favor of granting the petitioner a bond hearing.

***Likelihood of Continued Detention*** – The second German Santos factor also favors the petitioner. Dioubate's detention will continue well into the future. His removal order, issued January 6, 2026, is not final. (Doc. 6-4, Resp. Ex. 3, IJ Finston Order). His appeal with the BIA has been pending for three months.

14

(Doc. 6-4, Resp. Ex. 4, Filing Receipt). Assuming the BIA affirms, Dioubate may appeal to the appropriate Circuit Court of Appeals. The court cannot reasonably determine how long Dioubate's appeal will be pending or forecast whether it will be remanded at any stage of this process. Thus, there will be a delay of undefined duration — at least many more months. "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." German Santos, 965 F.3d at 211. Consequently, this factor weighs in favor of relief.

*Reasons for the Delay* - The third factor considers the reasons for the delay, "such as a detainee's request for continuances." Id. (citing Diop, 656 F.3d at 234; Demore, 538 U.S. at 531). The court also asks, "whether either party made careless or bad-faith 'errors in the proceedings that cause[d] unnecessary delay.' " Id. (quoting Diop, 656 F.3d at 234). Neither side has produced evidence that the other side has requested continuances or otherwise delayed matters. There is no evidence of bad faith. This factor is thus neutral. See id. at 212.

*Conditions of Confinement* – The fourth factor requires a determination of whether "the alien's conditions of confinement are meaningfully different from criminal punishment." Id. at 211 (cleaned up). Under the law, "if an alien's civil detention…looks penal, that **tilts the scales** toward finding the detention unreasonable." Id. (citing Chavez-Alvarez, 783 F.3d at 478) (emphasis added)).

15

The Pike County Correctional Facility is a county jail. A jail is a jail and there is no evidence that Dioubate is treated differently than the criminal pretrial detainees in county lockup or those inmates serving state criminal sentences of shorter durations. Therefore, the petitioner's detention is indistinguishable from criminal punishment. See id. at 213 (regarding the conditions at Pike County Correctional Facility); see also Chavez-Alvarez, 783 F.3d at 478 (regarding the conditions at York County Prison).

Additionally, the "conditions of confinement" factor and "length of detention" factors are interdependent parts of the German Santos reasonableness test. See 965 F.3d at 211 (citing Chavez-Alvarez, 783 F.3d at 478) ("And as the length of detention grows, so does the weight that" courts must give to the conditions of confinement factor). Put another way, with the interdependence of factors, the more conditions look like a jail sentence as confinement continues, the more the court must worry about due process. Id. at 212–13. Here, the petitioner has been held at a county jail for approximately eight months without a bail hearing for an alleged violation of civil law. No government has accused Dioubate of violent crime, sex offenses, drug dealing, or evading federal or state authorities. Yet, he is housed with criminal pretrial detainees in prison conditions in a rural part of the Commonwealth. Consequently, the conditions of confinement factor also weighs in Dioubate's favor and, on balance, the non-neutral German Santos

16

factors all support a finding that the petitioner's continued detention is unconstitutional.[5]  The petition for writ of habeas corpus will be granted.

***Form of Relief*** – The order issued in this case will not grant Dioubate's outright release from Pike CCF as requested in the traverse.  Rather, because of the violation of his due process rights, the petitioner is entitled to a timely bond hearing with a neutral IJ where the government will bear the burden to justify his continued detention by clear and convincing evidence that "must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community." German Santos, 965 F.3d at 213–

---

[5] A consideration of the procedural due process factors in Mathews v. Eldridge, 424 U.S. 319 (1976) leads to the same result.  Those factors are 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and 3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Id. at 335.  First, petitioner's private interest is the interest in not being physically detained by the government, which "is the most elemental of liberty interests[.]" Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004). "The restriction of liberty is particularly acute here where, absent a bond hearing, he would be detained for months or even years while his case proceeds." Cunin v. McShane, No. 3:25-CV-1887, 2025 WL 3542999, at *2 (M.D. Pa. Dec. 10, 2025) (Neary, J.) (citation omitted). Second, he has been detained without any apparent procedural safeguards, including the ability to obtain a bond hearing. See id. ("There is a certainty—not merely a risk—that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and incarcerate him indefinitely."); see also Patel, 2025 WL 3516865, at *6 (citing Bethancourt Soto v. Soto, No. 25-CV-16200, 807 F.Supp.3d 397, 409 (D.N.J. 2025); Quispe, 2025 WL 3537279, at *7).  As to the third consideration, the government has an interest in detaining noncitizens to ensure their appearance at future immigration proceedings and to prevent danger to the community. The government believes that it may vindicate those interests through detention without any individualized determination that this petitioner poses a flight risk or danger. But this goes too far for the reasons discussed in the body of this memorandum.

14. Given the application of this standard in other contexts, this is the standard that must be applied by the IJ. See id.

The court will add one caveat. Based on the lack of evidence of criminal activity or risk of flight in this case, if the government does not provide Dioubate with a bond hearing within 14 days in accordance with this memorandum, the petitioner will be ordered released from Pike CCF on his own recognizance.

**Conclusion**

Therefore, for the reasons set forth above, Adama Dioubate's petition for writ of habeas corpus will be granted. An appropriate order follows.

**Date:** 4/29/26

**JUDGE JULIA K. MUNLEY**
**United States District Court**