IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ADAMA DIOUBATE,                    :        No. 3:26cv648
                 Petitioner        :
                                   :        (Judge Munley)
    v.                             :
                                   :
CRAIG LOWE,                        :
                 Respondent        :

## MEMORANDUM ORDER

Before the court is a *pro se* motion to enforce habeas relief filed by Petitioner Adama Dioubate, an immigration detainee in the custody of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") at the Pike County Correctional Facility ("Pike CCF"). For the reasons set forth below, Dioubate's motion will be granted, and he will be ordered released from detention.

**Background**

Dioubate is a native and citizen of Guinea. (Doc. 6-2, Resp. Ex. 1). On January 5, 2024, he entered the United States with 133 other people near Sasabe, Arizona on the Southern Border. Id. He was arrested by an agent of United States Border Patrol and transported to the Tucson Soft Sided Facility for further processing. Id. There, he was served with a Notice to Appear and placed in removal proceedings as being present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A)(i). Id.

From there, it appears that Dioubate was released on his own recognizance to pursue an asylum application in a non-detained setting, with regular check-ins at ICE field offices.[1] (See Doc. 8 at 2).  On September 3, 2025, at one of these check-ins, Dioubate was arrested and taken into custody.  He has been detained since that time and is currently being held at Pike CCF, a county prison located in Lords Valley, Pennsylvania.

On January 6, 2026, an IJ ordered Dioubate removed to Guinea. (Doc. 6-4, Resp. Ex 3).  The IJ denied withholding of removal under the Immigration and Naturalization Act ("INA") and the Convention Against Torture. Id.  Dioubate appealed the decision to the Board of Immigration Appeals ("BIA"). (Doc. 6-5, Resp. Ex. 4).  To the court's knowledge, that appeal remains pending.

Dioubate filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on March 13, 2026. (Doc. 1).  By way of a prior memorandum and order, the court granted Dioubate's petition. Dioubate v. Lowe, No. 3:26CV648, 2026 WL 1166166 (M.D. Pa. Apr. 29, 2026).  Without getting into the granular details, the court determined that Dioubate's detention was governed by 8 U.S.C. § 1226(a), not § 1225(b)(2)(A) as the government had argued, and that petitioner

---

[1] The petitioner is in a county jail and did not supply any exhibits with his filing.  Respondent has not supplied Dioubate's A-file as ordered.  This limits the court's consideration of the period between January 5, 2024 and September 3, 2025 when Dioubate was in the interior of the United States.  The court has no details concerning his asylum application.

2

had experienced a violation of his procedural due process rights by being detained without a bond hearing. Id. at *2–6.

Habeas relief was granted in the form of a bond hearing with an immigration judge ("IJ"). To remedy the due process violation, the burden was placed on the government to justify detention. In doing so, the court relied upon the reasoning in German Santos v. Warden Pike Cty. Corr. Facility, 965 F.3d 203 (3d Cir. 2020). The memorandum stated as follows:

> The order issued in this case will not grant Dioubate's outright release from Pike CCF as requested in the traverse. Rather, because of the violation of his due process rights, the petitioner is entitled to a timely bond hearing with a neutral IJ where **the government will bear the burden to justify his continued detention by clear and convincing evidence** that "must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community." German Santos, 965 F.3d at 213–14. Given the application of this standard in other contexts, **this is the standard that must be applied by the IJ**. See id.

Id. at *7 (emphasis added).

Subsequently, Dioubate experienced a proceeding with IJ Corey Combs on May 11, 2026 via Webex. (Doc. 16-7, Resp. Ex. 6 at 2). IJ Combs called it an "individualized bond hearing." Id. He referenced the court's prior order. Id. But, for reasons unknown, IJ Combs did not apply the standard set forth in the court's memorandum. Id. He placed the burden on the respondent and determined that the respondent was a flight risk. Id.

3

Dioubate thus remains detained at Pike CCF.  His detention under 8 U.S.C. § 1226(a) has passed the nine-month mark.  Shortly after the hearing, Dioubate filed the instant motion to enforce.

On behalf of the respondent, the United States Attorney's Office for the Middle District of Pennsylvania opposes Dioubate's motion to enforce. (Doc. 16). The government challenges jurisdiction, argues that Dioubate must exhaust administrative appeals, and, without any qualifiers, asserts that IJ Combs "faithfully executed this [c]ourt's [o]rder." Id. at 12.  That, unfortunately, did not occur here.  Consequently, Dioubate will be released.

**Jurisdiction**

Generally, the court has jurisdiction over habeas petitions pursuant to 28 U.S.C. § 1331 and § 2241(a).  Respondent argues that the court lacks jurisdiction over Dioubate's motion to enforce due to a provision found within 8 U.S.C. § 1226.  Under the statute, "[n]o court may set aside any action or decision by the Attorney General under this Section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e).

Two strands of authority prevent the court from summarily denying Dioubate's motion to enforce under Section 1226(e) for lack of jurisdiction.

First, the court may liberally construe Dioubate's as a motion to enforce a conditional grant of the habeas writ.  Conditional writs accommodate

4

governments.  That is, a court may hold that some infirmity justifies relief but also provides the government with a time window to cure the error.  See Haskell v. Folino, 461 F. Supp. 3d 202, 210 (W.D. Pa. 2020) (citing Satterlee v. Wolfenbarger, 453 F.3d 362, 369 (6th Cir. 2006) and Phifer v. Warden, 53 F.3d 859, 864–65 (7th Cir. 1995)).  In such scenarios, district courts maintain continuing jurisdiction to address alleged noncompliance with a conditional writ. Gibbs v. Frank, 500 F.3d 202, 205 (3d Cir. 2007) (citing Phifer, 53 F.3d at 865; Mickens–Thomas v. Vaughn, 355 F.3d 294, 303 (3d Cir. 2004); see also Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir. 2011) (explaining that an immigration detainee was "correct that the district court had authority to review compliance with its earlier order" directing that the detainee receive a bond hearing before an immigration judge); Shonhai v. Lowe, No. CV 3:24-229, 2026 WL 538865, at *6 (M.D. Pa. Feb. 26, 2026) (Mannion, J.) (collecting district court cases).

The court's prior order directed the respondents to provide Dioubate, within 14 days, an individualized bond hearing in accordance with the analysis in the accompanying memorandum.  The court also ordered Dioubate released if he did not receive a bond hearing within the 14-day period.

Assume that the respondents did not comply with the second condition in that order.  There would be no reasonable jurisdictional dispute if the court then,

5

upon notice, entered a subsequent order releasing Dioubate if he was not provided with a bond hearing in that period.

Here, Dioubate alleges that he did not receive a bond hearing in accordance with the first condition, i.e., in accordance with the memorandum's reference to the burden of proof being placed on the government at such a hearing to prove danger or flight risk by clear and convincing evidence. Dioubate, 2026 WL 1166166 at *7. The court sees no reason why it would lack jurisdiction to consider whether the first condition was satisfied by the government.

Second, despite its jurisdiction-stripping language, Section 1226(e) contains no explicit provision barring habeas review. Demore v. Kim, 538 U.S. 510, 517 (2003). The Third Circuit has also never used Section 1226(e) to preclude petitioners from raising a constitutional challenge to the way an immigration bond hearing was conducted. See Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 279 (3d Cir. 2018) (noting that the habeas petitioner sought "to compel a second bond hearing despite alleging no constitutional defect in the one he received."); Sylvain v. Att'y Gen. of U.S., 714 F.3d 150, 155 (3d Cir. 2013) (citing Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir.2011) ("[Section 1226(e) ] does not limit habeas jurisdiction over constitutional claims or questions of law.")). Further, in non-precedential opinions, the appellate court

6

has recognized such jurisdiction.  <u>Ghanem v. Warden Essex Cnty. Corr. Facility</u>, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) ("Although we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, we may review whether the bond hearing was fundamentally unfair."); <u>Quinteros v. Warden Pike Cnty. Corr. Facility</u>, 784 F. App'x 75, 77 (3d Cir. 2019) ("Though we may not review discretionary decisionmaking involved in denial of a bond, we retain the power to review the legal standard underlying immigration officials' actions and to evaluate legal and constitutional claims on that basis.").

The court thus has jurisdiction to consider Dioubate's motion to enforce on its merits.[2]

**Analysis**

After resolving the government's jurisdictional challenge, the remainder of the analysis is relatively straightforward: whether IJ Combs followed the court's prior order.  He did not.  Instead of placing the burden on the government as the court had ordered, the IJ placed the burden on the petitioner in this case, or

---

[2] The government also offers up the petitioner's failure to exhaust administrative remedies as a bar to hearing the motion.  The motion is a request for the court to review the IJ's compliance with its previous conditional habeas order.  Thus, there would be nothing left for the petitioner to exhaust.  <u>A.D. v. Oddo</u>, No. CV 25-460J, 2026 WL 1251470, at *3 (W.D. Pa. Feb. 12, 2026). In any event, the exhaustion requirement would be prudential in this case, i.e., judge-made and discretionary. Prudential exhaustion requires the court "to balance the alien's interest in prompt access to the federal courts with the government's institutional interest in exhaustion." <u>United States v. Dohou</u>, 948 F.3d 621, 628 (3d Cir. 2020) (citing <u>McCarthy v. Madigan</u>, 503 U.S. 140, 144 (1992)). Dioubate has been detained under Section 1226(a) since September 2025.  Therefore, any exhaustion requirement is excused.

otherwise, the respondent before the IJ.[3] (Doc. 16-6, Resp. Ex. 5 at 3) ("[T]he court is holding this bond hearing under [8 U.S.C. § 1226(a)] with the burden on…the respondent to demonstrate that he's neither a danger nor a flight risk."). As noted above, the court ordered that the standard set forth in German Santos be applied where the government bears the burden to prove danger or flight by clear and convincing evidence.

The court thus turns to relief. That consideration is also straightforward. Previously, the undersigned ordered release if conditions were not satisfied. The conditions of the prior order were not satisfied. Release is warranted by that fact alone. In so ruling, the court need not reach any argument that Dioubate experienced a second due process violation before the IJ.

Consequently, for the reasons set forth above, it is hereby **ORDERED** that:

1) Adama Dioubate's motion to enforce, (Doc. 14) is **GRANTED**;

2) Respondent shall **immediately** release Dioubate under the same circumstances that existed prior to his detention, including, release: (1) within the area near where petitioner resided; (2) without the imposition of additional conditions (such as ankle monitors or electronic tracking

---

[3] The court notes that the Executive Office of Immigration Review did not have a French interpreter available at the time of the bond hearing. Dioubate's counsel waived the presence of an interpreter. (Doc. 16-6, Resp. Ex. 5 at 3). According to the government, the hearing lasted approximately six minutes. Id. at 1.

8

devices); (3) with all clothing and outerwear worn at the time of the detention or other appropriate attire; and (4) with all personal property, including, but not limited to, any driver's license, passport, immigration documents, currency, or cell phone that was seized at the time of detention and that is currently in their custody, possession, or control, whether maintained directly by respondents or by any contracted or affiliated facility;

3) On or before **July 13, 2026 at 12:00 noon**, respondent shall file a declaration or affidavit pursuant to 28 U.S.C. § 1746 confirming that Dioubate has been released from custody; and

4) The Clerk of Court is directed to close this case.

Date: 7-10-26

_____
JUDGE JULIA K. MUNLEY
United States District Court

9